IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| LINDA BALDWIN, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | 1:18-CV-36-RP |
| | § | |
| KENT SULLIVAN, *in his official capacity as the Commissioner of the Texas Department of Insurance*; TEXAS DEPARTMENT OF INSURANCE, DIVISION OF WORKERS' COMPENSATION; and OFFICE OF INJURED EMPLOYEE COUNSEL; | § § § § § § § | |
| | § | |
| Defendants. | § | |

## **ORDER**

Before the Court are two motions to dismiss filed by Defendants Kent Sullivan ("Sullivan") and the Texas Department of Insurance, Division of Workers' Compensation (the "Division of Workers' Compensation") (collectively, "Defendants").[1] (Dkts. 13, 28). Baldwin responded to Defendants' motions, (Dkts. 17, 31), and Defendants replied, (Dkts. 18, 33). Also before the Court is Baldwin's Motion for Leave to File Second Amended Complaint. (Dkt. 14). Sullivan responded to Baldwin's motion, (Dkt. 15), and Baldwin replied, (Dkt. 17, at 1–2). Having reviewed the parties' briefing, the evidence, and the relevant law, the Court finds that Defendants' motions to dismiss, (Dkts. 13, 28), should be GRANTED, and Baldwin's motion for leave to file second amended complaint, (Dkt. 14), should be DENIED.

---

[1] Based on Baldwin's complaint and subsequent filings, it is not clear whether she alleges claims against only Sullivan, or against Sullivan, the Division of Workers' Compensation, and the Office of Injured Employee Counsel ("OIEC"). She includes all three in her case caption, (*see* Dkt. 6, at 1), and some of her claims appear directed to all three parties, (*see id.* at 5–6). But only Sullivan has been served, (Dkt. 8), and Baldwin dropped the other parties from the caption in later filings, (*see, e.g.*, Dkt. 17, Dkt. 31). Based on the allegations and the liberal construction afforded to pro se pleadings, *see Perez v. United States*, 312 F.3d 191, 194–95 (5th Cir. 2002), the Court construes Baldwin's claims as brought against Sullivan, the Division of Workers' Compensation, and the OIEC. The OIEC is a separate governmental entity independent of the Division of Workers' Compensation. *See* Tex. Labor Code § 404.002(b). Because OIEC has not yet been served in this case or filed any motion with the Court in this case, the Court will analyze Baldwin's claims with respect to Sullivan and the Division of Workers' Compensation.

1

# I. BACKGROUND

Plaintiff Linda Baldwin is a former employee of Extended Stay America, where she worked as a Guest Service Registration Attendant. (Compl., Dkt. 6, at 2, 6; Compl., Ex. A, Dkt. 6-1, at 3). Baldwin alleges that, as a result of repetitive motions over an extended period of time, she developed plantar fasciitis and other ailments in her left foot and legs in August 2006. (Compl., Dkt. 6, at 6). Since 2006, she sought and received medical treatment for her injuries, including surgery. (*Id.* at 2–3; Compl., Ex. E, Dkt. 6-1, at 14–15).

The timeline following Baldwin's injury is not clear from the complaint. Baldwin alleges she reported her injuries to her employer and sought assistance with her claims from the OIEC. (*See* Compl., Ex. D, Dkt. 6-1, at 12). Relevant to this case, Baldwin participated in two separate contested hearings with the Division of Workers' Compensation related to compensation claims with her employer's workers' compensation insurance carrier, Zurich American Insurance Co. ("Zurich"). (*See* Compl., Dkt. 6, at 2, 4; Compl., Ex. A, Dkt. 6-1, at 8, 10, 28).

The first hearing was held on June 14, 2012. (Compl., Ex. A, Dkt. 6-1, at 24). At some point, Baldwin's employer notified Zurich about her injury, and Zurich apparently denied benefit payments. Baldwin submitted two compensation claims with the Division of Workers' Compensation. (*See* Compl., Dkt. 6, at 3–4; Compl., Ex. A, Dkt. 6-1, at 23). OIEC offered assistance for the hearing, but Baldwin appeared without representation.[2] (Compl., Ex. A, Dkt. 6-1, at 23; Mot. Dismiss, Ex. A, Dkt. 13-1, at 24). On June 22, 2012, the hearing officer found Zurich not liable for either claim. (Compl., Ex. J, Dkt. 6-1, at 28; *see* Mot. Dismiss, Ex. A, Dkt. 13-1, at 23–29).[3] On September 4, 2012, a Division of Workers' Compensation panel affirmed both decisions. (Mot. Dismiss, Ex. A, Dkt. 13-1, at 4, 7, 10).

---

[2] Baldwin alleges that she was denied assistance for these claims. (Compl., Dkt. 6, at 7). It is not clear whether Baldwin declined assistance or OIEC failed to provide assistance on these claims.

[3] Baldwin attached excerpts of the hearings to her complaint, (Compl., Dkt. 6-1); Sullivan attached the full documents in his motion to dismiss. (*See* Mot. Dismiss, Ex. A, Dkt. 13-1; Mot. Dismiss, Ex. B, Dkt. 13-2).

The second contested hearing occurred four years later on October 19, 2016. Baldwin submitted a separate compensation claim. (Compl., Ex. B, Dkt. 6-1, at 8). This time, Baldwin requested and received OIEC assistance at the hearing. (*Id.* at 2). Even so, the hearing officer denied Baldwin's claim, finding that she had not sustained a compensable repetitive trauma injury and that Zurich was relieved from liability because Baldwin failed to timely file a claim for compensation within one year of the injury as required by Texas law. (*Id.* at 8). Baldwin sought review of that decision, (*id.* at 3), but a Division of Workers' Compensation panel issued a letter order finalizing the decision on January 17, 2017, (*id.*, Ex. C, at 10; Mot. Dismiss, Ex. B, Dkt. 13-2, at 1).

On January 17, 2018, Baldwin filed this suit *pro se*,[4] naming the Division of Workers' Compensation, the OIEC, and Kent Sullivan as defendants. (Dkt. 1). In her amended complaint, Baldwin includes three claims: (1) deprivation of her federal rights and property interests by failing and refusing to help her with her medical needs under 42 U.S.C. § 1983, (Compl., Dkt. 6, at 7); (2) discrimination based on disability under Title II of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12131, (*id.* at 8); and (3) discrimination based on disability in violation of Michigan's Persons with Disabilities Civil Rights Act ("PDCRA"), Mich. Comp. Laws § 37.1101 et seq., (*id.* at 9).[5] Baldwin seeks both compensatory and punitive damages as well as various forms of injunctive relief. Defendants filed motions to dismiss arguing that her claims should be dismissed pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). (Dkts. 13, 28).

---

[4] This is not the first action Baldwin has filed on this matter. Baldwin has previously filed several lawsuits in Texas state courts complaining of the denial of benefits. *See Baldwin v. Zurich Am. Ins. Co.*, Cause No. D-1-GN-12-003139 (353rd Civ. Dist. Ct. Travis Cty. 2012); *Baldwin v. Zurich Am. Ins. Co.*, D-1-GN-13-001281 (261st Civ. Dist. Ct. Travis Cty. 2013); *Baldwin v. Zurich Am. Ins. Co.*, D-1-GN-13-002454 (53rd Civ. Dist. Ct. Travis Cty. 2013); *Baldwin v. Zurich Am. Ins. Co.*, D-1-GN-17-000151 (98th Civ. Dist. Ct. Travis Cty. 2017). She also sued Zurich in this Court in connection with the denial of benefits. *See Baldwin v. Zurich Am. Ins. Co.*, No. 1:17-CV-149-RP, 2017 WL 2963515 (W.D. Tex. July 11, 2017).

[5] In Baldwin's motion seeking leave to file her second amended Complaint, (Dkt. 14), her proposed amended complaint abandons her PDCRA claim. (*See* Dkt. 14-1, at 11–12). Instead, Baldwin includes an additional claim for discrimination based on disability under the ADA. (*Id.*). The substance of that allegation, however, is identical to the PDCRA claim in Baldwin's First Amended Complaint; the only proposed change is that Baldwin removed any reference to Michigan's PDCRA. (*Compare* Dkt. 14-1, at 11–12, *with* Dkt. 6, at 9).

## II. LEGAL STANDARD

### A. *Rule 12(b)(1)*

Under Rule 12(b)(1), a court may dismiss a complaint for "lack of subject-matter jurisdiction." Fed. R. Civ. P. 12(b)(1). A case is properly dismissed for lack of subject matter jurisdiction when the court lacks "the statutory or constitutional power to adjudicate the case." *Home Builders Ass'n of Miss., Inc. v. City of Madison, Miss.*, 143 F.3d 1006, 1010 (5th Cir. 1998). The court may dismiss a complaint for lack of jurisdiction based on: (1) the face of the complaint; (2) the complaint supplemented by undisputed facts from the record; and (3) the complaint supplemented by undisputed facts and the court's resolution of disputed facts. *Montez v. Dep't of Navy*, 392 F.3d 147, 149 (5th Cir. 2004). The court may "weigh the evidence and satisfy itself" that subject matter jurisdiction exists. *MDPhysicians & Assocs., Inc. v. State Bd. Of Ins.*, 957 F.2d 178, 181 (5th Cir. 1992) (quoting *Williamson v. Tucker*, 645 F.2d 404, 413 (5th Cir. 1981)). The party asserting jurisdiction bears the burden of proof. *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001). Dismissal under 12(b)(1) is not a determination on the merits and does not prevent a plaintiff from pursuing a claim in a court with proper jurisdiction. *Id.* The court should grant a 12(b)(1) motion to dismiss only if it appears certain that the plaintiff cannot prove any set of facts that would entitle her to recovery. *Morris v. Thompson*, 852 F.3d 416, 419 (5th Cir. 2017).

### B. *Rule 12(b)(6)*

Under Rule 12(b)(6), a court may dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "To survive a Rule 12(b)(6) motion to dismiss, a complaint 'does not need detailed factual allegations,' but must provide the plaintiff's grounds for entitlement to relief—including factual allegations that when assumed to be true 'raise a right to relief above the speculative level.'" *Cuvillier v. Taylor*, 503 F.3d 397, 401 (5th Cir. 2007) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). "[A] complaint must contain sufficient factual

4

matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). A claim is facially plausible when "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* In reviewing a motion to dismiss, the court considers the content of the pleadings and any attached documents, as well as documents attached to a motion to dismiss if they are referred to in the complaint and central to the plaintiff's claims. *Villarreal v. Wells Fargo Bank, N.A.*, 814 F.3d 763, 766–67 (5th Cir. 2016).

### III. DISCUSSION

The Court first addresses Defendants' jurisdictional arguments before deciding whether Baldwin fails to state a claim. *See Ramming*, 281 F.3d at 161.

#### A. *Eleventh Amendment Immunity*

Defendants argue, among other things, that the Court lacks jurisdiction because they are immune from suit under the Eleventh Amendment. (Dkt. 13, at 7; Dkt. 28, at 7–9). Eleventh Amendment immunity deprives a federal court of jurisdiction to hear a suit against a state. *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984); *Voisin's Oyster House, Inc. v. Guidry*, 799 F.2d 183, 186 (5th Cir. 1986). Eleventh Amendment immunity is considered a jurisdictional bar; claims barred by sovereign immunity are properly dismissed under Rule 12(b)(1) without prejudice. *Warnock v. Pecos Cty., Tex.*, 88 F.3d 341, 343 (5th Cir. 1996).

The Eleventh Amendment is properly invoked when the state is "the real, substantial party in interest." *Pennhurst*, 465 U.S. at 101 (quoting *Ford Motor Co. v. Dep't of Treasury*, 323 U.S. 459, 464 (1945). The state is a real, substantial party in interest when "the judgment sought would expend itself on the state treasury or domain or would restrain the state from acting or compel it to act." *Warnock*, 88 F.3d at 343 (citing *Pennhurst*, 465 U.S. at 101 n.11). "[A] plaintiff cannot avoid the

5

sovereign immunity bar by suing a state agency or an arm of a State rather than the State itself." *Richardson v. S. Univ.*, 118 F.3d 450, 452 (5th Cir. 1997). One exception, however, is that the Eleventh Amendment does not bar federal courts from granting prospective injunctive relief for violations of federal law. *Ex parte Young*, 209 U.S. 123, 159 (1908); *Edelman v. Jordan*, 415 U.S. 651, 667–68 (1974); *Aguilar v. Tex. Dep't of Criminal Justice*, 160 F.3d 1052, 1054 (5th Cir. 1998). Whether this Court has jurisdiction over Baldwin's § 1983 and ADA claims thus depends on (1) whether the Division of Workers' Compensation is a state entity, and (2) the nature of the relief Baldwin seeks.

The Division of Workers' Compensation is a state entity. The Court considers six factors to determine whether an agency is an arm of the state:

> (1) whether state statutes and case law characterize the agency as an arm of the state; (2) the source of funds for the entity; (3) the degree of local autonomy the entity enjoys; (4) whether the entity is concerned primarily with local, as opposed to statewide, problems; (5) whether the entity has authority to sue and be sued in its own name; and (6) whether the entity has the right to hold and use property.

*Minton v. St. Bernard Par. Sch. Bd.*, 803 F.2d 129, 131 (5th Cir. 1986) (quoting *Clark v. Tarrant Cty., Tex.*, 798 F.2d 736, 748 (5th Cir. 1986)). A review of these factors supports finding that the Division of Workers' Compensation is a state entity.

Texas defines "state government" as "an agency, board, commission, department, or office . . . that: (A) was created by the constitution or a statute of this state; and (B) has statewide jurisdiction." Tex. Civ. Prac. & Rem. Code § 101.001(6). Here, the Division was created by the laws of the state of Texas as a division within the Texas Department of Insurance, a state agency. Tex. Labor Code § 402.001. The Division also has statewide jurisdiction; it administers and operates the workers' compensation system of the state. *Id.* Baldwin does not dispute that the Division is an arm of the state governed by a state statutory scheme. The Court finds that the Division of Workers' Compensation is a state entity. The only remaining question, then, concerns the nature of relief sought under § 1983 and the ADA. The Court considers each claim in turn.

*1. Section 1983*

Baldwin alleges that "Defendant has deprived Plaintiff of her federal constitution and statutory rights by failing and refusing" to service her medical needs under 42 U.S.C. § 1983. (Compl., Dkt. 6, at 7). Specifically, she asserts that Defendants[6] "deprived Plaintiff of her federal rights, property interest and otherwise discriminate[d] against Ms. Baldwin[] based on her disability." (*Id.*). Defendants argue they are immune from suit.

Section 1983 does not waive state sovereign immunity. *See Quern v. Jordan*, 440 U.S. 332, 338 n.7 (1979). To the extent that Baldwin seeks monetary damages or retroactive injunctive relief against Sullivan in his official capacity[7] or the Division of Workers' Compensation under § 1983, those claims are barred. *See Papasan v. Allain*, 478 U.S. 265, 277–78 (1986). A court's remedial power under § 1983 against public officials in their official capacity is limited to prospective injunctive relief; a court cannot award money damages from a public official or a state agency. *See Ex Parte Young*, 209 U.S. 123 (1908). Additionally, *Young* only allows a remedy for ongoing violations of federal law rather than discrete violations that occurred in the past. *Papasan*, 478 U.S. at 277–78.

On Baldwin's remaining claims for relief, Defendants argue that Baldwin lacks an ongoing violation of federal law that would entitle her to injunctive relief from a state agency or public official under § 1983. (Mot. Dismiss, Dkt. 13, at 7–8; Mot. Dismiss, Dkt. 28, at 7–8). The Court agrees.

---

[6] Suits against officials in their official capacities generally represent another way of pleading an action against an entity of which an officer is a part. *Rayborn v. Bossier Sch. Bd.*, 881 F.3d 409, 417 (5th Cir. 2018) (quoting *Kentucky v. Graham*, 473 U.S. 159, 165–66 (1985)). The Court will thus analyze Baldwin's claims against Sullivan in his official capacity and her claims against the Division of Workers' Compensation under the same standard.

[7] It is unclear whether Baldwin is suing Sullivan in his individual capacity, official capacity, or both. In order to state a claim against Sullivan as an individual under § 1983, Baldwin must allege either that Sullivan "was personally involved in the acts causing the deprivation of his constitutional rights or that a causal connection exists between an act of the official and the alleged constitutional violation." *Douthit v. Jones*, 641 F.2d 345, 346 (5th Cir. 1981). In her captions and responses, Baldwin specifically asserts claims against Sullivan in his official capacity only. (*See, e.g.*, Pl.'s Resp. Mot. Dismiss, Dkt. 17, at 1). Baldwin also clarifies she "files this claim against Mr. Sullivan because his agency receives federal grant money to oversee the 14th Amendment." (Pl.'s Resp. Mot. Dismiss, Dkt. 31, at 2). She was denied services from programs "Sullivan oversees and administered." (*Id.*). Her claims thus appear to be based on Sullivan's official authority as Commissioner rather than any personal involvement he had in denying Baldwin's claims. The Court thus construes Baldwin's § 1983 claims against Sullivan in his official capacity only.

At first glance, Baldwin appears to seek prospective injunctive relief. For example, she "prays that Commissioners Sullivan will strengthen amend its policies with zero tolerance concerning prejudice, ADA accommodation and retaliation through his division" and she seeks "an order enjoining/restraining Defendant from further acts of discrimination or retaliation." (Compl., Dkt. 6, at 10). On closer inspection, however, Baldwin has not alleged any ongoing injury that entitles her to prospective relief. Her complaint focuses on the treatment she received during two contested hearings on her workers' compensation claims. (*See id.* at 2–4). Even under the liberal construction afforded to pro se plaintiffs, *see Perez*, 312 F.3d at 194–95, Baldwin's complaint is best construed as an attempt to contest the Division of Workers' Compensation's decision to deny her compensation claims. There is nothing in the complaint to indicate that she continues to experience an ongoing violation of her federal rights. The Court thus finds that the Eleventh Amendment bars Baldwin's § 1983 claims against the Division of Workers' Compensation and Sullivan.

*2. Title II of the Americans with Disabilities Act*

Baldwin also alleges discrimination under Title II of the ADA because she "has been denied and excluded from the benefits of Defendant [sic] program services which would provide Plaintiff a less confining program that satisfies Plaintiff [sic] needs." (Compl., Dkt. 6, at 8). By excluding her from "the Program and services," Baldwin says Defendants discriminated against her based on disability, age, and need for medical care; limiting the availability of services based on her disability; and denying her the opportunity to receive benefits afforded to other qualified individuals. (*Id.*). Defendants argue that because no conduct by either Defendant implicates Baldwin's right of access to the courts or violates the Fourteenth Amendment, the Eleventh Amendment bars her ADA claim. (Mot. Dismiss, Dkt. 13, at 11; Mot. Dismiss, Dkt 28, at 8).

Title II of the ADA prohibits discrimination based on disability in the provision of public services. *Frame v. City of Arlington*, 657 F.3d 215, 223 (5th Cir. 2011). Specifically, Title II provides

8

that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity" 42 U.S.C. § 12132. The ADA contains a clear expression of congressional intent to abrogate state sovereign immunity. *Tennessee v. Lane*, 541 U.S. 509, 518 (2004). To determine whether Title II validly abrogates state sovereign immunity, courts apply a three-part inquiry detailed in *United States v. Georgia*, 546 U.S. 151, 156 (2006). *Hale v. King*, 642 F.3d 492, 497–98 (5th Cir. 2011) (per curiam).

First, a court must determine "which aspects of the State's alleged conduct violated Title II." *Georgia*, 546 U.S. at 159. Then, the court assesses "to what extent such misconduct also violated the Fourteenth Amendment." *Id.* "If the State's conduct violated both Title II and the Fourteenth Amendment, Title II validly abrogates state sovereign immunity." *Hale*, 642 F.3d at 498. Otherwise, the court proceeds to the third step: "whether Congress's purported abrogation of sovereign immunity" as to conduct that violates Title II of the ADA but not the Fourteenth Amendment independently is "nevertheless valid." *Georgia*, 546 U.S. at 159.

Here, Baldwin's claim fails at step one—she has not identified which aspects of the Division of Workers' Compensation's conduct violated Title II. *See Hale*, 642 F.3d at 498 (analyzing whether Title II of the ADA was violated and declining to address the remaining *Georgia* steps). In order to state a prima facie case under Title II of the ADA, a plaintiff must allege that (1) she has a qualifying disability; (2) she is "being denied the benefits of services, programs, or activities for which the public entity is responsible, or is otherwise discriminated against by the public entity;" and (3) such discrimination is by reason of her disability. *Id.* at 499.

Baldwin fails to state a prima facie claim under Title II for two reasons. First, she has not identified a qualifying disability under the ADA. She notes that she was injured and required medical care, (Compl., Dkt. 6, at 2–3, 6), but she does not otherwise specify how her impairment

9

substantially limits a major life activity as required by the ADA. *See Hale*, 642 F.3d at 500 (analyzing whether a disability substantially interferes with a major life activity under the ADA). Second, she has not sufficiently alleged discrimination by reason of her disability. Baldwin's compensation claims were denied, but she does not explain why she was denied beyond conclusory allegations of discrimination. In fact, the Division of Workers' Compensation's decisions make clear she was denied not because of her disability or age, but because she (1) did not sustain her injury in the course of employment, (2) failed to inform her employer within 30 days of her injury as required by statute, and (3) failed to timely file a claim for compensation within one year as required by statute. (*See* Mot. Dismiss, Ex. A, Dkt. 13-1, at 25–28; Mot. Dismiss, Ex. B, Dkt. 13-2, at 4–6). Baldwin has not alleged facts that would allow the Court to infer that disability was a factor in denying her claims.

Having concluded that Baldwin failed to state a violation of Title II, the Court finds that analysis of the remaining *Georgia* prongs is not necessary. *Hale*, 642 F.3d at 503. Baldwin's Title II claim under the ADA is barred by the Eleventh Amendment.

### B. *Michigan's Persons with Disabilities Civil Rights Act*

Baldwin also asserts a claim under Michigan's Persons with Disabilities Civil Rights Act ("PDCRA"), Mich. Comp. Laws § 37.1101, et seq. Defendants argue that Baldwin fails to assert a claim under the PDCRA because Baldwin has not explained why Michigan law should apply here. (Mot. Dismiss, Dkt. 13, at 14; Mot. Dismiss, Dkt. 28, at 11). The Court agrees.

No legal theory supports applying Michigan law to the facts of this case. "A federal court sitting in diversity applies the conflict-of-laws rules of the state in which it sits." *Vasquez v. Bridgestone/Firestone, Inc.*, 325 F.3d 665, 674 (5th Cir. 2003). "Texas applies the 'most significant relationship' test," considering "various contacts: the place where the injury occurred, the place where the injury causing conduct occurred, the parties' residence, and the place where the relationship, if any, between the parties is centered." *Id.* (citing *Gutierrez v. Collins*, 583 S.W.2d 312,

318–19 (Tex. 1979); RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 145 (1971)). All of these factors support applying Texas law. It is undisputed that all the events occurred in Texas while Baldwin was a Texas resident. (*See* Compl., Ex. A, Dkt. 6-1, at 12). And both the Texas Department of Insurance and the Division of Workers' Compensation are creatures of Texas law. *See* Tex. Ins. Code § 31.031; Tex. Labor Code § 402.001. Baldwin's PDCRA claim is dismissed.

### C. Leave to Amend

Finally, the Court considers whether to allow Baldwin the opportunity to amend her complaint in order to state a valid claim. Baldwin seeks leave to file her second amended complaint (Dkt. 14). In both her motion and her reply), Baldwin offers no explanation for why she seeks leave to amend. (*See* Mot. Leave to File Second Am. Compl., Dkt. 14, at 1; Pl.'s Reply Mot. Leave File Second Am. Compl., Dkt. 17, at 1–2). Defendants argue that any attempt to amend would be futile. (Mot. Dismiss, Dkt. 13, at 15; Def.'s Resp. Mot. Leave File Second Am. Compl., Dkt. 15, at 2).

Under Federal Rule of Civil Procedure 15, leave to amend should be freely given when justice so requires. Fed. R. Civ. P. 15(a). Generally, a *pro se* litigant should be afforded an opportunity to amend her complain before it is dismissed. *Brewster v. Dretke*, 587 F.3d 764, 767–68 (5th Cir. 2009). Leave to amend, however, is not required where a plaintiff has already pleaded her "best case." *Id.*; *Hale*, 642 F.3d at 503. A plaintiff has pleaded her best case after she is "apprised of the insufficiency" of her complaint. *Morrison v. City of Baton Rouge*, 761 F.2d 242, 246 (5th Cir. 1985). Similarly, a court need not grant a futile motion to amend. *Legate v. Livingston*, 822 F.3d 207, 211 (5th Cir. 2016). "Futility is determined under Rule 12(b)(6) standards, meaning an amendment is considered futile if it would fail to state a claim upon which relief could be granted." *Id.*

The Court finds that granting Baldwin leave to amend would be futile. Baldwin sought leave to amend after Sullivan filed his motion to dismiss. While her proposed second amended complaint removed any reference to the PDCRA, it failed to address the other deficiencies in her complaint.

11

Baldwin's proposed amended complaint contains no new factual allegations material to her claims. The proposed amended complaint thus suffers from the same deficiencies and conclusory statements of law that the Court identifies above. Most importantly, it would fail to overcome Defendants' claims for immunity. The Court thus finds Baldwin's claims fatally infirm and concludes that granting leave to amend would be futile.

## IV. CONCLUSION

**IT IS ORDERED** that the motions to dismiss filed by Defendant Sullivan, (Dkt. 13), and Defendant Division of Workers' Compensation, (Dkt. 28), are **GRANTED**. Baldwin's § 1983 claims against Defendant Division of Workers' Compensation and Defendant Sullivan in his official capacity and her ADA claim are **DISMISSED** under Rule 12(b)(1). Baldwin's PDCRA claim is **DISMISSED** under Rule 12(b)(6).

**IT IS FURTHER ORDERED** that Baldwin's Motion for Leave to File Second Amended Complaint, (Dkt. 14), is **DENIED**.

Additionally, Baldwin filed this action on January 17, 2018. (Dkt. 1). To date, there has been no return of service showing summons were issued and served upon Defendant OIEC. "If a defendant is not served within 90 days after the complaint is filed, the court—on motion or on its own after notice to the plaintiff—must dismiss the action without prejudice against that defendant or order that service be made within a specified time." Fed. R. Civ. P. 4(m). More than 90 days have passed since Plaintiff filed her amended complaint. Accordingly, Plaintiff is **ORDERED** to show cause in writing to the Court on or before **October 26, 2018**, as to why the claims against the Defendant OIEC should not be dismissed for failure to timely effectuate service. Baldwin is also admonished that failure to do so may result in the dismissal of this action as to that defendant. *See* Fed. R. Civ. P. 41(b) (action may be dismissed for want of prosecution or failure to comply with

court order); *Larson v. Scott*, 157 F.3d 1030, 1031 (5th Cir. 1998) (district court has authority to dismiss case for want of prosecution or failure to comply with court order).

    **SIGNED** on October 15, 2018.

_____
ROBERT PITMAN
UNITED STATES DISTRICT JUDGE